BERZON, Circuit Judge,
dissenting:
I dissent with respect to the striking of Ms. D from the jury. The prosecutor proffered three transparently pretextual justifications for striking Ms. D — the only African-American left in the jury pool and the sole African-American woman in the entire pool — before he finally stumbled upon a plausible reason for excluding her. Because his first three explanations were patently pretextual, I have no doubt that the “peremptory strike was ‘motivated in substantial part’ by race.” Crittenden v. Ayers, 624 F.3d 943, 959 (9th Cir.2010) (as amended) (quoting Cook v. LaMarque, 593 F.3d 810, 815 (9th Cir.2010)). As Taylor’s equal protection rights were violated under the rule articulated in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), I would grant the petition.
1. As an initial matter, it is not at all clear that the state court’s determination regarding Taylor’s Batson claim is entitled to AEDPA deference. The California Supreme Court summarily denied Taylor’s petition for review, so we look to the state court of appeals as the “last reasoned state-court opinion.” Musladin v. Lamarque, 555 F.3d 830, 834-35 (9th Cir.2009). In reaching its determination that the exclusion of Ms. D was not the result of purposeful discrimination, the state court relied on a justification for striking her that was not advanced by the prosecution — namely, that she believed the police should not pursue cars for minor offenses. Prior to the state court’s decision, the Supreme Court prohibited reviewing courts from “thinking up any rational basis” for excluding jurors: “The Court of Appeals’s ... substitution of a reason for eliminating [the juror] does nothing to satisfy the prosecutors’ burden of stating a racially neutral explanation for their own actions.” Miller-El v. Dretke, 545 U.S. 231, 252, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005).
Here, the court of appeals incorrectly supplied its own reasons justifying Ms. D’s exclusion, thereby “appl[ying] a rule that contradicts the governing law set forth in [Supreme Court] cases.” Musladin, 555 F.3d at 834 (quoting Williams v. Taylor, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Its decision in that respect was “contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States,” and not entitled to AEDPA deference. 28 U.S.C. § 2254(d)(1).
2. I would grant the petition even if the state court had applied the correct federal law as determined by the U.S. Supreme Court, because, as I explain below, the state court’s decision was “based on an *670 unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d)(2).
At a hearing on Taylor’s Batson motion, the prosecutor began with the following explanation for striking Ms. D: She had been the victim of two sexual assaults perpetrated by African-American men (she had been dating one of her assailants at the time of the assault). The prosecutor speculated that “emotional baggage” from these events could bias her in favor of his case. He then went on to admit he was no “psychologist,” but suspected she might “overcompensate” for her racial biases against African-Americans by holding him to a higher standard.
This explanation is so absurd as to be affirmatively indicative of racial bias. Justice Marshall observed that “[a] prosecutor’s own conscious or unconscious racism may lead him easily to [a] conclusion” regarding an African-American juror “that would not have come to his mind if a white juror had acted identically.” Batson, 476 U.S. at 106, 106 S.Ct. 1712 (Marshall, J., concurring). That prediction is especially insightful here: If Ms. D were a white woman who had been sexually assaulted by a white man she was dating, the prosecutor would not have suggested she might be racially biased against white people— and with good reason, as the theory is highly suspect to say the least. Coupled with the unbelievable suggestion that the prosecutor was concerned that Ms. D would favor his case, the prosecutor’s primary “neutral” explanation was pretextual, to put it mildly.
On top of all that, there is no support in the record for the prosecutor’s concerns that Ms. D’s perceived “emotional baggage” might affect her performance as a juror. After finding out there was no element of sexual assault in the case (Taylor was accused of evading a peace officer and revving his engine to push a patrol car backwards), Ms. D gave an “iron clad guarantee” that she was “certain [she] could act in a fair and impartial manner if selected to be a juror,” and that Taylor’s race (unsurprisingly) would not affect her decision.
The prosecutor’s second justification, that Ms. D’s brother had been arrested for drug crimes, fares no better, because it cannot withstand comparative analysis. The majority of the seated jurors had indicated that either they, a close friend, or a relative had been arrested or convicted for crimes ranging from DUIs, “drugs”, burglary, reckless driving, mail fraud, and even murder. The state court of appeals dismissed this comparative analysis in the main by reiterating that none of these comparable jurors “had experienced sexual assaults.” Of course, the record belies any argument that Ms. D’s experience as a victim of a sexual assault would influence her performance as a juror; the prosecutor expressed concerns about racial biases arising from the assault, not the assault itself. So the only plausible interpretation of the state court’s basis for rejecting the comparative analysis is that none of the comparable jurors had been the victim of crimes perpetrated by African Americans. And this point is only pertinent if the state court adopted the suspect premise, advanced by the prosecutor, that Ms. D might be biased against African Americans. Again, Justice Marshall hit the nail on the head when he predicated that “[a] judge’s own conscious or unconscious racism may lead him to accept [a prosecutor’s racially tinged] explanation as well supported.” Batson, 476 U.S. at 106, 106 S.Ct. 1712 (Marshall, J., concurring).
Third, the prosecutor explained that “[Ms. D] responded positively” when he asked if she thought “just because of [Taylor’s] race maybe he is more likely inno *671 cent or maybe he’s not gotten a very fair shake in the system.” In actuality, Ms. D acknowledged the existence of racial profiling, explaining that “some officers just like anybody else can’t separate feelings they may have for the people from this individual’s race.” She then unequivocally stated she had no knowledge about the Sacramento Police, and she would not be more lenient on the defendant because of his race: “[His race] wouldn’t matter. I hold you to the same standard no matter what race he was.” Ms. D made an uncontroversial observation about racial profiling, and she offered no thoughts on Taylor’s circumstances in particular. The prosecutor’s “mischaracterization of [Ms. D’s] answer is evidence of discriminatory pretext.” Cook, 593 F.3d at 818.
After advancing these three plainly pre-textual explanations, the prosecutor finally bumped into a plausible justification for striking Ms. D. When asked if “anybody had any negative experience with law enforcement,” Ms. D “threw her head back and said, yes.” While some seated jurors discussed incidents that could have negatively affected their views of law enforcement, the record does not suggest they answered as energetically as Ms. D. Determinations based on demeanor lie “peculiarly within a trial judge’s province,” Hernandez v. New York, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (quotation omitted), and this justification, standing alone, might constitute a valid race-neutral explanation.
But “ ‘the prosecution’s proffer of [one] pretexual explanation naturally gives rise to an inference of discriminatory intent,’ even where other, potentially valid explanations are offered.” Ali v. Hickman, 584 F.3d 1174, 1192 (9th Cir.2009) (quoting Snyder v. Louisiana, 552 U.S. 472, 484, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008)). Here, the single plausible justification cannot overcome the inference of discriminatory intent arising from the prosecution’s three absurd justifications for striking Ms. D. I therefore would hold that the prosecutor was “motivated in substantial part by discriminatory intent.” Snyder, 552 U.S. at 485, 128 S.Ct. 1203; see also Crittenden, 624 F.3d at 958. The state court ignored serious problems with three out of four of the prosecutor’s stated reasons. It also dismissed a comparative analysis by relying on an implausible argument, advanced by the prosecutor without any basis in the record, that Ms. D would be biased against African-Americans. Thus, even if the state court’s decision was not flat out “contrary to clearly established Federal law,” its conclusion was “based on an unreasonable determination of the facts in light of the evidence presented.” 28 U.S.C. § 2254(d)(1) & (2).
Because I would reverse the conviction on Batson grounds, I would not reach the other issues addressed by the majority. I respectfully dissent.